### GROUT v. COTTRELL.

(Supreme Court, General Term, Fourth Department. February, 1893.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE.

In an action for malicious prosecution, it appeared that defendant had caused plaintiff's arrest for the larceny of a piece of shafting and a belt used in defendant's sawmill, which plaintiff occupied under a verbal lease. Before the arrest, plaintiff and defendant became involved in a quarrel as to their rights in the mill. Plantiff testified that he had dropped the shafting into the sawdust and hidden the belt, because he had been annoyed by boys running the mill in his absence. There was conflicting evidence that defendant maliciously instituted the criminal proceedings to harass plaintiff, and force his removal from the mill. *Held,* that it was proper to submit the question of probable cause to the jury. Wass v. Stephens, 28 N. E. Rep. 21, 128 N. Y. 123, followed.

2. HARMLESS ERROR—ADMISSION OF EVIDENCE.

Defendant, in an action for malicious prosecution, was not prejudiced by the admission of the docket of the justice, since deceased, to prove proceedings in the criminal case, where the material facts shown by it appear in testimony before objection was made to the admission of the docket.

Merwin, J., dissenting.

Appeal from circuit court, Cortland county.

Action by Arthur S. Grout against John B. Cottrell to recover damages for malicious prosecution. From a judgment entered on a verdict in favor of plaintiff for $700, and from an order denying a motion for a new trial, on the case and exceptions, defendant appeals. Affirmed.

From the evidence it appears that in the year 1888 the defendant was the owner of a sawmill and gristmill in the town of Scott, Cortland county, and that some arrangement was entered into between the plaintiff and defendant in respect to the plaintiff's occupation of the mill property, and under that arrangement the plaintiff entered into possession, and, as he testifies, under a verbal lease for the use of it for one year from the spring of 1888 until the spring of 1889, unless the same should be sooner sold by the defendant. Some controversy arose about the 18th of November, 1888, between the parties as to the plaintiff's possession and rights; and the defendant and the plaintiff had a sharp altercation, exhibiting heated temper, and using warm words toward each other in respect to their rights in the premises. On the 24th of November,

1888, the defendant claimed to have "missed from their accustomed places a piece of shafting, weighing about fifty pounds, used in running the saw; also a belt used for the same purpose." He also claimed that he had made inquiry in respect to the same, and had been informed by one Sweet that the plaintiff "told him that he had taken care of that shafting and belting, and would like to see Cottrell get them." The defendant applied to a justice of the peace in the town for a criminal warrant, and obtained the same on his complaint, and caused the arrest and prosecution of the plaintiff for the alleged crime of larceny. The plaintiff, having been arrested, was taken before the magistrate, and pleaded not guilty. An adjournment was taken for two days, and the plaintiff went to the village of Cortland, and consulted a lawyer, and returned on the adjourned day, to wit, the 26th of November, and asked for a venire, and, without counsel, proceeded to the trial before a justice and a jury, and a verdict of not guilty was rendered, and entered in the justice's minutes, and the plaintiff then was discharged. The plaintiff, at the trial before the justice, and upon the trial at the circuit, gave evidence tending to show that, having been annoyed by "the boys" running the mill in his absence, he dropped the piece of shafting into the sawdust beneath, and had hidden the belt. He also claimed the right to do so as the lessee of the premises, having the possession, control, and management thereof, under the arrangement made with the defendant, and, upon the trial of this action, gave evidence tending to show that after the quarrel between the parties, which commenced about the 18th of November, the defendant maliciously instituted the criminal proceedings, and caused his arrest, for the purpose of harassing the plaintiff, and of forcing his removal from the premises in question. Upon many of the main features of the controversy between the parties, the evidence was conflicting.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

B. A. Benedict, for appellant.
A. P. Smith, for respondent.

HARDIN, P. J. Upon the evidence given upon the trial, the court committed no error in refusing to grant a nonsuit, and in submitting the questions arising upon the evidence to the jury. Wass v. Stephens, 128 N. Y. 123, 28 N. E. Rep. 21. In the case just cited, Andrews, J., in delivering the opinion, said:

"There was at least evidence to go to the jury upon both the questions of probable cause and malice. While it is true that what constitutes probable cause, where an arrest has been made, does not depend upon the question whether an offense has been actually committed, or upon the innocence of the accused, but upon the prosecutor's belief of his guilt, based upon reasonable grounds, (Underwood v. Carney, 1 Cush. 288; Fagnan v. Knox, 66 N. Y. 525,) nevertheless, applying this test in this case, the jury were justified in their conclusion that the defendant had no reasonable ground for believing that the charge made by him was true."

The learned counsel for the appellant calls our attention to Anderson v. How, 116 N. Y. 336, 22 N. E. Rep. 695. Attention was given to that case by Andrews, J., in the opinion from which we have just quoted, and we need make no further comment to it.

2. Appellant urges that it was error to admit the justice's docket in evidence to prove proceedings in the criminal case. The justice was dead, and his docket was produced by the town clerk, and, upon an inspection of the contents thereof, nothing is found therein beyond the formal entries of the issuance of the warrant on the 24th of November, 1888; the arrest and the return of the prisoner; his plea of not guilty; that subpœnas were issued to both parties; that an adjournment was had to the 26th of November; and that on the 26th of November a venire was is-

sued, and a jury summoned, and trial had; and the names of the jurors; the names of the witnesses sworn; and the verdict returned November 27th of not guilty; and that the defendant was discharged. All the material facts shown by the record appear in the testimony before the objection and exception had been taken to the admission of the docket. We are therefore of the opinion that the exception presents no prejudicial error.

3. When plaintiff was upon the stand, he testified that he purchased the mill of the defendant 27 years previous, and that he paid interest on $3,000 for upwards of 20 years. The evidence was objected to, and the court observed: "That may stand,—that he paid a portion of it." An exception was taken. When the defendant was upon the stand, his counsel proposed to show the value of the property to be $4,500 when he purchased it, in 1869. The court observed: "I don't think it is important on either side. I don't think the subject is competent. I will strike that evidence of value and payments out if there is any importance to it." Thereupon the defendant's counsel observed: "What we propose to show is that the property was worth $4,500, and cost this man that." Thereupon the court observed: "I don't think it is competent. I will strike out the plaintiff's evidence of what he paid, for the purpose of saving rights that you have in the matter; the amount they paid; statements who paid it." Thereupon the plaintiff's counsel observed: "I thought it was competent to show his good faith in the matter; that he bought the property, and kept it for quite a long time." The case then states, viz: "The Court, to plaintiff's counsel: Do you insist on his evidence stating the amount he paid? Plaintiff's counsel: Yes, sir. The Court: Then I think I will let it stand, and let in the other, and give you an exception." Thereupon the defendant's counsel propounded the following question: "Now, you may state what that property was worth. Answer. $4,500,—a little over $4,500. (Asked to strike out the amount he paid.) The Court: I refuse to strike it out on the ground you insisted on, the evidence being kept in that the court says is incompetent." We think, under the circumstances, the defendant could not complain of the rulings made by the court on the subjects embraced therein.

4. Appellant's learned counsel has called our attention to some other exceptions taken during the progress of the trial. After a careful examination of the case and the questions made in respect to the exceptions, we are of the opinion that no error is presented warranting an interference with the trial.

5. We are urged by the learned counsel for the appellant to rule and hold that the verdict is excessive. It was delivered by a jury after a full consideration of all the circumstances disclosed by the evidence bearing upon the intent, motive, and acts of the defendant, and after a charge made in respect to the evidence, which presented the law quite as favorable to the defendant as he was entitled to have the same delivered, and the question of damages was one fairly within the discretion of the jury. We are disposed to say, as the court said in Kingsland v. Mayor, etc., (Sup.) 15 N. Y. Supp. 232.

"Under the circumstances of the case, the amount awarded by the jury was not excessive, and on going over the whole record we find nothing whatever which should induce us to reverse the judgment entered below."

Judgment and order affirmed, with costs.

MARTIN, J., concurs.    MERWIN, J., dissents.